UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X
RICHARD TERRACCIANO,             :
                                 :        16 Civ. 1324 (LAP)
              Plaintiff,         :
                                 :        MEMORANDUM OPINION
     -against-                   :          AND ORDER
                                 :
THOMAS MCGARRITY,                :
MCGARITTY & ROSENBLATT, and      :
LAWRENCE J. GLYNN,               :
                                 :
              Defendants.        :
                                 :
------------------------------x

Loretta A. Preska, Senior United States District Judge:

     Before the Court are two motions to dismiss filed by (1)

Defendants Thomas McGarrity and Rosenblatt & McGarrty, LLP, and

(2) Defendant Lawrence Glynn.  (McGarrity Mot., Oct. 7, 2016,

ECF No. 24; Glynn Mot., Oct. 7, 2016, ECF No. 25).  Plaintiff

Terracciano filed an opposition, which Plaintiff's counsel

termed an "Affirmation," (Opp., Jan. 17, 2017, ECF No. 46), to

which Defendants filed replies, (Glynn Reply, Feb. 7, 2017, ECF

No. 55; McGarrity Reply, Feb. 7, 2017, ECF No. 57).  Plaintiff

has failed adequately to allege diversity jurisdiction.

However, if the Court did have jurisdiction it would find that

Plaintiff has failed to state a claim for either legal

malpractice or breach of contract and that amendment of the

Complaint would be futile.  Accordingly, Defendants' motions to

dismiss are granted and the case is dismissed.

## I.    BACKGROUND

The following facts are drawn from the Complaint and other documents incorporated by reference.  Plaintiff Terracciano brings this action for breach of contract and negligence in the form of legal malpractice, alleging that he retained Defendants McGarrity, Rosenblatt & McGarrty, LLP, and Glynn to represent him in a guardianship case involving his parents, Laura and Fiore Terracciano, in exchange for a $10,000 retainer fee. (Compl. ¶¶ 4, 14, Feb. 19, 2016, ECF No. 1).  Plaintiff's brother, Paul Terracciano, had brought a case in Supreme Court, Westchester County, before Judge Emmett Murphy seeking to have his parents declared incompetent persons ("IPs") and guardianship over his parents and his parents' property. (Id. ¶ 5-6).  Paul Terraciano also sought to revoke all powers of attorney naming Plaintiff as attorney-in-fact.  (Id. ¶ 6).

The Complaint alleges that the Defendants agreed via their retainer agreement to carry out the following tasks: (1) to appear at an impending February 20, 2013, hearing to contest the incompetency of Laura and Fiore Terracciano and other statements made by Paul Terracciano, (2) to move to dismiss the guardianship proceeding on the basis of improper service, (3) to obtain affidavits attesting to the mental fitness of Laura and Fiore Terracciano, (4) to retrieve from the court file a copy of the underlying petition and related affidavits, (5) to file

2

notices of appearances by February 4, 2013, (6) to set up a
meeting with Court Evaluator Steward McMillan, (7) to produce
affidavits attesting to the mental fitness of Laura and Fiore
Terracciano to Court Evaluator McMillan, (8) to produce to the
court financial records showing that Paul Terracciano had
misappropriated funds belonging to Laura and Fiore Terracciano,
and (9) to subpoena witnesses Jean Prem Howe and Chuck Howe, who
would be able to attest to the mental fitness of Laura and Fiore
Terracciano. (Compl. ¶ 9).

On his breach of contract claim, Plaintiff alleges that
Defendants breached each one of the agreements listed above,
noting in particular that Defendant Glynn failed to prepare for
the February 2013 hearing, reading the petition only minutes
before it began, and that Defendant McGarrity failed to attend
at all. (Id. ¶¶ 10-49). As a result of the Defendants'
failures, the Complaint alleges that Paul Terracciano acquired
control over Laura and Fiore Terracciano's money and persons and
that Plaintiff's powers of attorney were revoked. (Id. ¶ 50).[1]
Plaintiff alleges that he suffered damages in the form of the
$10,000 paid to the Defendants for the retainer agreement and
$100,000 paid to new counsel in order to correct Defendants'

---

[1] The Court notes that the guardianship court in fact granted
Paul Terracciano guardianship over his parents' persons, but not
their property. (Opp. Ex. 7 at 2).

errors. (Id. ¶ 52). Plaintiff also seeks damages for the emotional distress he suffered in the amount of $20 million and for punitive damages in the amount of $20 million. (Id.)

On his negligence claim, Plaintiffs alleges substantially the same conduct described above. Plaintiff alleges that the Defendants owed him a duty of effective and meaningful representation, which they breached by failing to file the proper motions, failing to attend the February 2013 hearing, failing to obtain necessary records, failing to call necessary witnesses, failing to object to an in camera questioning of Laura and Fiore Terracciano to determine their competency, failing to file a notice of appeal, and other errors described above. (Id. ¶¶ 54-55). Plaintiff alleges that Defendants' negligence was the proximate cause of his damages, which include the $10,000 for the retainer agreement, $100,000 to pursue an appeal, $20 million in emotional damages against each Defendant, and $20 million in punitive damages against each Defendant. (Id. ¶¶ 60-61).

II. LEGAL STANDARD

Rule 12(b)(6) permits a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted" upon a motion by a defendant. Fed. R. Civ. P. 12(b)(6). In considering such a motion, courts must accept all non-conclusory factual allegations as true and draw "all

4

reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008)(quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)) (internal quotation mark omitted); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

A complaint will survive a motion to dismiss, however, only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully" and requires a "context-specific" consideration of the complaint's factual allegations based upon the court's "judicial experience and common sense." Id. at 1949-50. In this analysis, complaints that merely offer "labels and conclusions," "naked assertion[s]" devoid of "further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not" survive. Twombly, 550 U.S. at 555, 557.

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F.Supp.2d 275, 279 (S.D.N.Y.2004) (citing

<u>Yak v. Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir.2001)
(internal quotations omitted)).

   III. DIVERSITY JURISDICTION

   Defendants argue that Plaintiff has not proved diversity,
which is the only basis for federal jurisdiction over this case.
In order for a court to assert diversity jurisdiction, a
plaintiff must allege that the case "is between . . . citizens
of different states."  28 U.S.C. § 1332(a)(1).  "It is firmly
established that diversity of citizenship should be distinctly
and positively averred in the pleadings, or should appear with
equal distinctness in other parts of the record."  <u>Leveraged</u>
<u>Leading Admin. Corp. ex rel. Dweck v. Pacificorp Capital</u>, 87
F.3d 44, 47 (2d Cir. 1996)(internal quotation and citation
omitted).  28 U.S.C. § 1332 provides that "a corporation shall
be deemed to be a citizen of any State by which it has been
incorporated and of the State where it has its principal place
of business ..."  28 U.S.C. § 1332(c)(1).  With respect to
individual parties, citizenship "depends upon their places of
domicile.  Even though a party may have several places of
residence, he or she may have only one domicile at a given
time."  <u>Chapelle v. Beacon Communications Corp.</u>, 863 F.Supp.
179, 181 (S.D.N.Y.1994).

   The Complaint alleges only that Plaintiff "maintains a
residence in Palm City, Florida," and that Defendants maintain

their principal place of business in White Plains, New York. (Compl. ¶¶ 1-2). However, it is well-established that "a statement of the parties' residence is insufficient to establish their citizenship." Dweck, 87 F.3d at 47. Furthermore, the Complaint alleges nothing that would indicate the citizenship of the individual Defendants. Plaintiff's averments are plainly insufficient for the Court to conclude that Plaintiff is a citizen of Florida, that all of the Defendants are citizens of New York, and that the Court therefore has diversity jurisdiction over this case.

Furthermore, in an action that Plaintiff commenced only one week after he filed the Complaint in this case, Plaintiff stated that "at all times hereinafter mentioned, Plaintiff Richard Terracciano was and still is a resident of the State of New York." (McGarrity Mot. Ex. E ¶ 1). The Court notes, as an initial matter, that it may take judicial notice of documents filed in other courts and with other adjudicatory bodies. Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000). Plaintiff argues in his Opposition that although he does have a residence in New York he is in fact a citizen of Florida, providing evidence that he pays property taxes and utilities in Florida, is registered to vote in Florida, and that he maintains Florida car insurance and a Florida driver's license. (Opp. at 8; Aff. of Richard Terracciano Exs. 1-6, Jan. 17, 2017, ECF No. 47).

However, it is inappropriate for the Court to consider the unsworn statements of counsel in a memorandum of law, including the opposition to a motion to dismiss. See Bond v. City of New York, 2015 WL 5719706, at *5 (E.D.N.Y. Sept. 28, 2015). Furthermore, Plaintiff's factual averments in his responsive papers may not be relied on to supplement the claims in his Complaint. Branch v. Tower Air, Inc., 1995 WL 649935, at *5 (S.D.N.Y. Nov. 3, 1995)(stating that "memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint").

Accordingly, the Court finds that the Complaint has failed adequately to allege that the parties have complete diversity of citizenship. Although leave to amend should be "freely given when justice so requires," Fed. R. Civ. Proc. 15(a), leave to amend should not be given where amendment of the complaint would be futile because the complaint has failed to state a claim upon which relief may be granted. See Foman v. Davis, 371 U.S. 178, 182 (1962); Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). For reasons explained below, the Court finds that Plaintiff has failed to state a claim either for legal malpractice or breach of contract and that amendment would therefore be futile.

IV.  STATUTE OF LIMITATIONS

Under New York law, a legal malpractice claim accrues when the alleged malpractice is committed, and it must be commenced within three years of such conduct regardless of whether the underlying theory is based in contract or tort.  N.Y. C.P.L.R. § 214(6).  Defendants contend that the alleged negligence occurred on February 20, 2013, and that the three-year statute of limitations for legal malpractice expired on February 20, 2016.  (Glynn Mot. at 12; McGarrity Mot. at 15).  In the alternative, Defendants note that the retainer agreement between Plaintiff and Defendant McGarrity and Rosenblatt provided for retention through Judgment, which was rendered in April 2013.  (McGarrity Mot. at 13).  While New York law allows tolling of the statute of limitations for the period following the alleged malpractice until the attorney's representation of the client on the particular matter is completed, see Zorn v. Gilbert, 8 N.Y.3d 933 (2007), Defendants argue that Plaintiff's legal practice claim is nonetheless time barred because he failed to file the summons and complaint until August 4, 2016, (McGarrity Mot. at 13).

Plaintiff Terracciano first attempted to file the Complaint on February 19, 2016.  (Compl., Feb. 19, 2016, ECF No. 1).  However, Plaintiff filed the document in an incorrect format and failed to file a civil cover sheet in accordance with the Local

9

Rules of the Southern District of New York, and the case was administratively closed on March 2, 2016. (Closing Order, Mar. 2, 2016, ECF No. 3). On August 1, 2016, Plaintiff corrected the deficiency and moved to reopen the case, (Mot. to Reopen, Aug. 1, 2016, ECF No. 4), which the Court granted on August 3, 2016, (Order, Aug. 3, 2016, ECF No. 5). Therefore, the question before the Court is which of the foregoing dates the Complaint can be deemed to have been filed.

The Court of Appeals has instructed that local rules have the force of law so long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution. See Contino v. United States, 535 F.3d 124, 127 (2d Cir. 2008). Federal Rule of Civil Procedure 5(d)(4) states that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." Furthermore, Rule 83(a)(2) prohibits the enforcement of a local rule regulating the form of a filing if its enforcement would cause a party to lose a right and the party's non-compliance with the rule was not willful.

The Court finds that Plaintiff's filing the Complaint in an incorrect format and failing to file a civil cover sheet qualify as errors as to form. Furthermore, Defendants do not allege that Plaintiff's non-compliance with the local rule was willful. If the Court were to enforce the local rule regarding the

required formatting of ECF documents and the filing of a civil cover sheet, Plaintiff would necessarily lose a right because his legal malpractice claim would be barred by the three-year statute of limitations. A fortiori, Defendants argue that the entire Complaint should be dismissed on the grounds that three-year statute of limitations should apply to the breach of contract claim, rather than the usual six, because the breach of contract claim is "essentially a malpractice claim." (McGarrity Mot. at 14-15)(citing In re R.M. Kliment & Frances Halsband, Architects, 3 N.Y.3d 538 (2004)). Accordingly, the Federal Rules require the Court to deem the Complaint filed not on August 4, 2016, but rather on the date of the Complaint's original filing, February 19, 2016, such that Plaintiff's claims are not barred by the three-year statute of limitations. If the Court had jurisdiction over this case, it would therefore deny Defendants' motions to dismiss on the grounds that Plaintiff's legal malpractice and breach of contract claims are time barred.

V.    FAILURE TO STATE A CLAIM

a. Breach of Contract

A complaint for breach of contract under New York law must allege: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Plaintiff executed a

retainer agreement with Defendants McGarrity and McGarrity &
Rosenblatt LLP, with Defendant Glynn designated "of counsel," on
February 7, 2013.  (Aff. in support of Am. Mot. Dismiss Ex. 2,
Oct. 25, 2016, ECF No. 31).  The letter does not indicate any
specific services Defendants would perform for Plaintiff other
than representing him at the guardianship hearing for Fiore and
Laura Terracciano.  (Id.).  Plaintiff alleges in the Complaint
that Defendants agreed to perform, and breached, a number of
agreements described above.  (Supra at 2-3).

However, the allegations supporting the breach of contract
claim are virtually identical allegations supporting the
malpractice claim.  (Compare Compl. ¶ 11 with Compl. ¶ 55).
Plaintiff alleges that Defendants "promised" to take certain
actions in the breach of contract claim and that the failure to
take those same actions also constituted Defendants' negligence.
Where, as here, a breach of contract arises from the same set of
operative facts as a legal malpractice claim, the breach of
contract claim is properly dismissed as duplicative.  Palmieri
v. Biggiani, 108 A.D.3d 604 (2d Dept. 2013); Sonnenschine v.
Giacomo, 744 N.Y.S.2d 396, 398 (2d Dept. 2002)("Plaintiff's
remaining causes of action for breach of contract . . . allege
the same operative facts as the cause of action for legal
malpractice, and, accordingly, were also properly dismissed for
failure to state a cause of action.")

Accordingly, if the Court had jurisdiction, Plaintiff's breach of contract claim would be dismissed as duplicative of his legal malpractice claim.

### b. Legal Malpractice

#### i. Legal Standard

The elements of a legal malpractice claim under New York law are (1) attorney negligence, (2) proximate cause, and (3) damages. Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006). In order to prevail on a legal malpractice claim, the plaintiff bears the burden of proving all of the elements of the cause of action. Davis and Davis, P.C. v. Morson, 286 A.D.2d 584 (1st Dept. 2001).

To demonstrate proximate cause, a district court must find that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." Stonewell Corp. v. Conestoga Title Ins. Co., 678 F.Supp.2d 203, 209 (S.D.N.Y. 2010). Furthermore, "[s]peculative contentions about what might have happened had the defendant attorney . . . taken a different approach in litigating a case on behalf of the plaintiff [are] not sufficient to support the plaintiff's allegations of legal malpractice." Citidress II Corp. v. Toyaker, 105 A.d.3d 798 (2d Dept. 2013).

ii. Discussion

Plaintiff advances several arguments concerning how Defendants negligently represented him -- all of them fail to allege plausibly the elements of a legal malpractice claim. First, Plaintiff argues that Defendants should have gone to the courthouse to obtain copies of the petition prior to the February 2013 hearing. (Opp. at 14). However, on January 17, 2013, two days after the petitions were filed, Judge Murphy issued a sealing order. (See Decl. of Theodore Green Ex. L, Feb. 7, 2017, ECF No. 56). Under New York Mental Hygiene Law § 81.07, a guardianship proceeding is commenced by the filing of a petition, upon which the court must issue an order to show cause scheduling a hearing within four weeks. N.Y. M.H.L § 81.07(a) and (b). The order to show cause must be served on the alleged incapacitated person, the attorney for the alleged incapacitated person, and the court evaluator. N.Y. M.H.L. §81.08(e). Other persons, including children of the alleged incapacitated persons, are entitled to notice of the proceeding but not a copy of the petition. N.Y. M.H.L. §81.08(f). Accordingly, there was no basis for Defendants to move to dismiss the petition on the grounds that Plaintiff had not been properly served, and, if the Court had jurisdiction, it would find that Defendants were not negligent for failing to do so.

Second, Plaintiff argues that the Defendants should have produced financial records at the February 2013 hearing that would have established that Paul Terracciano had misappropriated Fiore and Laura Terracciano's funds, whereas Plaintiff had not. However, upon receiving a copy of the petition at the February 2013 hearing, Defendant Glynn moved for a continuance insofar as the "petition alleges financial misconduct" by Plaintiff. (Opp. Ex. 2 at 6-7). Judge Murphy denied the continuance on the grounds that it was important to make an expeditious determination regarding the guardianship application. (Id. at 9). While the guardianship court took some testimony from Paul Terracciano regarding his parents' finances, it did so only to determine "the ability of Laura and [Fiore] to manage their own affairs, not how this difference between Richard and Paul is going to play out." (Opp. Ex. 3 at 31). When Defendant Glynn attempted to cross-examine Paul regarding his financial dealings, Judge Murphy upheld an objection and noted that the court was only interested in the fitness of the parents and whether they should be adjudged IPs. (Opp. Ex. 5 at 7-8). The court added, "I don't want any more delving in the nature of Paul's relationship with animosity toward or knowledge of the finances of Richard." (Id. at 8). Accordingly, the Court would not find the Defendants were negligent when it is clear from the record that the Defendants did attempt to produce financial

records at the February 2013 hearing but were stopped from doing so by the guardianship court.

Third, Plaintiff claims that Defendants' failure to call certain witnesses who would have attested to Fiore and Laura Terracciano's mental fitness, and to provide affidavits attesting to their mental fitness to the Court Evaluator, "caused Plaintiff to lose his one opportunity to prevent the guardianship from being created; to prove his parents were competent; . . . and to continue to act as attorney in fact under viable powers of attorney. (Compl. ¶ 55). In his Opposition, Plaintiff further relies on a July 2014 report prepared by property guardian McLaughlin concerning whether Plaintiff misappropriated his parents' money. (Opp. at 19). The report concluded after interviewing several witnesses that "Laura and Fiore Terracciano understood the nature and consequences of these transactions, the objects of their bounty and executed the transactions willingly." (See id.).

However, upon review of the record, the Court cannot conclude that Plaintiff's arguments amount to anything more than "[s]peculative contentions about what might have happened had the defendant attorney . . . taken a different approach in litigating a case on behalf of the plaintiff." Citidress II Corp., 105 A.d.3d at 798. During the February 2013 hearing, the guardianship court conducted in camera interviews of Fiore and

16

Laura Terracciano. (Opp. Ex. 7 at 2). Fiore consented to a guardianship and stated that he wanted Paul to serve as guardian. (Id.) Fiore also stated during the in camera interview that he did not "trust" the Plaintiff. (Glynn Aff. Ex. E (June 21, 2016, Decision) at 44, Oct. 7, 2016, ECF No. 23). The court found that each parent had "meaningfully participated" during the in camera interviews and that each had "functional limitations" that impaired his or her ability to perform their respective activities of daily living. (Opp. Ex. 7 at 2). The guardianship court concluded that each "may suffer harm because of that." (Id. at 1). The court appointed Paul as guardian of the person of each parent but denied his application to be appointed guardian of the property, instead ordering the appointment of an independent property guardian. (Id. at 2).

Plaintiff's allegation that the guardianship court would have discounted this evidence had Defendant Glynn called certain witnesses and ignored its own in camera observations of Fiore and Laura's mental fitness is mere speculation. Plaintiff has therefore failed to allege plausibly that he would have prevailed in the underlying action but for Defendants' failure to call certain witnesses at the February 2013 hearing and to provide certain affidavits to the Court Evaluator. See Stonewell Corp., 678 F.Supp.2d at 209; Cohen v. Kacroo, 115 A.D.3d 512, 513 (1st Dept. 2014). Accordingly, if the Court had

jurisdiction, it would find that Plaintiff has failed to state a claim for legal malpractice on this basis.

Fourth, Plaintiff's allegation that the failure of Defendants McGarrity and McGarrity & Rosenblatt LLP to appear at the February 20 hearing and Defendants' failure to file notices of appearances by February 4, 2013, caused Plaintiff's unfavorable outcome are no more than mere speculation. (Compl. ¶ 9). As an initial matter, Plaintiff did have representation at the February 2013 hearing in the form of Defendant Glynn, who was designated "of counsel" by the retainer agreement. (Aff. in support of Am. Mot. Dismiss Ex. 2). That Plaintiff would have received a favorable outcome at the February 2013 hearing had Defendant McGarrity attended in addition to Defendant Glynn is pure speculation. Furthermore, Plaintiff has not pleaded "specific facts" -- nor could he since it is undisputed that Defendant Glynn was Plaintiff's counsel of record at the hearing -- showing how the date on which Defendants filed a notice of appearance in the underlying action caused Plaintiff's unfavorable outcome. See Citidress II Corp., 105 A.d.3d at 798. Accordingly, the Court would hold that Plaintiff has failed to state a claim for legal malpractice on these bases as well.

In his Opposition, Plaintiff also argues that Defendants were the proximate cause of his unfavorable outcome because they

never filed a cross-petition for Plaintiff to become guardian. (Opp. at 15). As an initial matter, Plaintiff did not include this allegation in the Complaint, and thus it is not properly before the Court. See Branch, 1995 WL 649935, at *5. Even if the Court were to consider the new allegation, it is mere speculation that Judge Murphy would have granted Plaintiff's cross-petition considering the evidence adduced at the February 2013 hearing, which indicated, for example, that Fiore and Laura Terracciano were concerned with how Plaintiff was handling their financial affairs (Opp. Ex. 6 at 3) and that Plaintiff had taken exceedingly poor care of his parents in the aftermath of Hurricane Sandy, (Opp. Ex. 2 at 13-19; Opp. Ex. 3 at 1-31)(Tr. of Paul Terraccianno Direct Exam.). Indeed, Judge Murphy noted specifically that "I'm not considering an application by [Plaintiff] to be appointed guardian of the property in light of the allegations that I have." (Opp. Ex. 5 at 7). Accordingly, it is mere speculation that Plaintiff would have been appointed guardian in any respect had Defendants filed a cross-petition, and the Court finds that amending the Complaint to include this allegation would be futile.

Plaintiff further argues in his Opposition that the guardianship court declined to re-appoint Paul as guardian in post-judgment proceedings because Paul refused to be subjected to cross-examination regarding his fitness as guardian and bank

records showing he engaged in certain financial improprieties. (Opp. at 16-17). Accordingly, Plaintiff alleges that Defendants' failure to cross-examine Paul on these topics during the February 2013 hearing was the proximate cause of Paul being named guardian. (Id.). Despite this different outcome at the later proceeding, Plaintiff has nevertheless failed plausibly to allege attorney negligence. As explained above, during the February 2013 hearing Judge Murphy took testimony regarding Fiore and Laura Terracciano's finances only in so far as it related to their capacity to manage their affairs and prevented Defendant Glynn from eliciting testimony regarding Paul's financial dealings. The record therefore shows that Defendant Glynn advanced the very same litigation strategy at the February 2013 hearing that Plaintiff alleges in the Opposition that he negligently failed to pursue.

Furthermore, Plaintiff misstates and omits several of Judge Murphy's reasons in the decision dated June 21, 2016 for declining to re-appoint Paul Terracciano as guardian. These include: "(i) he has previously been removed as Guardian of the IPs' Person for accosting Fiore's Court-appointed counsel in Court; (ii) his intractable hostility to his brother; (iii) in November 2014, he approved a medical procedure for Fiore, despite his awareness of the fact that Groppe was Guardian of Fiore's Person at that time; and (iv) his 'letter/oral'

application made during the post-judgment hearing was dismissed,
due to his failure to re-appear personally in Court to be
subject to cross-examination on that application." (Glynn Aff.
Ex. E (June 21, 2016, Decision) at 51-52, Oct. 7, 2016, ECF No.
27). All four of Judge Murphy's stated justifications for
denying Paul Terracciano's application to be re-appointed
guardian were therefore based on events that occurred after
Defendants had concluded their representation of Plaintiff.
Because Defendants could not have made any of these arguments at
the earlier February 2013 hearing, the Court would not find that
they were negligent for failing to do so.

Plaintiff's legal malpractice claim would fail for the
additional reason that Plaintiff filed numerous motions after
the February 2013 hearing by different counsel in which he
sought the same relief.[2] It is well-settled under New York law
that the introduction of new counsel serves as an intervening
cause in a legal malpractice claim, severing the chain of
causation between the negligent actions of an attorney and a

---

[2] By order to show cause returnable May 5, 2015, Plaintiff moved
by his counsel Tamara Harris ("Harris") for the removal of the
guardians of the person and property for both IPs and requested
that he be named guardian. (Glynn Aff. Ex. E (June 21, 2016,
Decision) at 6). On August 3, 2015, Plaintiff's counsel Jeffrey
Roth ("Roth") made an oral application to terminate the IPs'
guardianship. (Id. at 8). By order to show cause returnable
September 16, 2015, Harris sought to terminate the IPs'
guardians and to allow Plaintiff to care for his parents.
(Id.).

plaintiff's injuries, so long as the new counsel had "sufficient opportunity to protect the [plaintiff's] rights." Perks v. Lauto & Garabedian, 306 A.D.2d 261, 262 (2d Dept. 2003). After the February 2013 hearing, Plaintiff retained successor counsel, all of whom had sufficient time to seek the same relief he desired irrespective of any alleged negligence by the Defendants. These intervening acts break the chain of causation between the alleged legal malpractice and Plaintiff's damages and thereby prevent Plaintiff from establishing proximate cause as a matter of law.

Accordingly, if the Court had jurisdiction over this case, it would find that none of Plaintiff's claims for legal malpractice are meritorious and that amendment of the Complaint would be futile.

VI.   CONCLUSION

For reasons stated above, Plaintiff has failed adequately to plead diversity jurisdiction. If the Court did have jurisdiction, it would hold that Plaintiff has failed to state a claim either for breach of contract or legal malpractice and, thus, finds that amendment of the Complaint would be futile. Accordingly, Defendants' motions to dismiss (ECF Nos. 24, 25) are granted, and all other pending motions are denied as moot. The case is dismissed.

SO ORDERED.

Dated:     New York, New York
           May 24, 2017

LORETTA A. PRESKA
Senior United States District Judge